CAMPBELL PRINTING-PRESS & MANUF'G Co. *v.* EAMES VACUUM BRAKE CO.

*(Circuit Court, S. D. New York.   November 18, 1890.)*

1. PATENTS FOR INVENTIONS—VALVES FOR PNEUMATIC PIPES—NOVELTY—INVENTION.
   Claim 1 of letters patent No. 401,680, granted to Edward S. Boynton, April 16, 1889, for an improvement in valves for pneumatic pipes, was "in combination with an external pivoted valve, a compressive helical spring inclosed within a tubular guide formed upon or attached to the valve."   In a device for coupling the pipes between railroad cars previously patented, the valve was made to hold the coupling, or to fly shut by means of a torsional helical spring.   *Held*, that the combination of claim 1 was but the substitution of a compressive helical spring for the torsional spring of the older structure, with the limitation that the tubular guide must be attached to the valve, and that such claim was void for want of novelty.

2. SAME.
   The second claim of such letters patent was limited by stating that the tubular guide must be attached to the valve between one end of the guide and a stop at the pivoted point of the valve, and thus insured a neat, compact, and cheap structure, besides safety and durability.   *Held*, that the device involved invention, and was valid.

In Equity.
*Philip R. Voorhees*, for complainant.
*J. E. Maynadier*, for defendant.

COXE, J.   The complainant sues to restrain the infringement of letters patent No. 401,680, dated April 16, 1889, granted to Edward S. Boynton, assignor to the complainant, for an improvement in valves for pneumatic pipes or tubes.   On the 17th of July, 1877, a patent, No. 193,078, was granted to Frederick W. Eames for a new device for coupling the pipes between railroad cars, especially designed for use in connection with the vacuum power-brake.   In the Eames structure the valve is made to hold the coupling, or to fly shut upon the valve seat by means of a torsional helical spring.   In the patent in hand the same result is produced by a compressive helical spring.   The substitution

of the one spring for the other, with the ingenious mechanical changes made necessary thereby, constitutes the only difference between the Eames and Boynton couplings. Invention is predicated of this substitution and this only. The patentee refers, in the specification, to the Eames vacuum brake and points out various defects in the coiled torsional spring there used, which, he says, is perishable and liable to deteriorate under the influence of grit, dirt, and climatic changes. These defects he asserts are "well known," and are, he thinks, remedied by his spring, which is within a case and thus protected from the deteriorating influences referred to. The specification further states "that helical, compressive springs have been used for the automatic closing of valves and that such a combination is not broadly new; but in such cases both the springs and valves are not external to but one or both are within a valve-casing." The claims are as follows:

"(1) In combination with an external pivoted valve, a compressive helical spring inclosed within a tubular guide formed upon or attached to the valve, substantially as and for the purposes set forth. (2) In combination with an external pivoted valve, a self-closing device consisting of a compressive helical spring held within a tubular guide formed upon or attached to said valve between one end of said guide and a stop at the pivotal point of the valve, substantially as and for the purposes set forth."

Infringement is admitted. The defenses are, *first*, that the patent is void for want of novelty; and, *second*, that the defendants have an equitable license under it. The elements of the combination of the first claim are:

"(1) An external pivoted valve. (2) A compressive helical spring within a tubular guide. (3) The tubular guide must be formed upon or attached to the valve."

The combination here claimed involves nothing more than the substitution of a compressive helical spring for the torsional spring of the Eames structure, with the limitation that the tubular guide inclosing the spring must be attached to the valve. A claim so broad cannot be upheld. It is void for want of patentable novelty. It requires no argument to show that it is not invention to take a spring out of an old machine and put in its place another form of spring, equally old, to do precisely the same work. The use of the words "within a tubular guide formed upon or attached to the valve" do not aid the claim in this regard. The mention of a compressive spring in connection with the Eames coupling would naturally suggest to the skilled mechanic the use of an inclosing tube as well as the necessity of fastening the tube either to the valve or to the coupling. It must be attached to either one or the other. Fastening it to the former required no more ingenuity than fastening it to the latter. There is nothing which limits the first claim to the combination shown in the drawings. The location of the tube is not specified further than that it must be attached to the valve. The word "valve" in the claim is doubtless intended to cover the valve lever as well, for, strictly speaking, the tube in the patented structure is not formed upon or attached to the valve proper but to the web connecting

the valve with the boss.    An inclosed spring attached to the valve at any point or in any manner would, therefore, infringe.    The claim is too broad.

The second claim is further limited by the statement that the tubular guide must be attached to said valve between one end of said guide and a stop at the pivotal point of the valve.    This language is not entirely clear, but there is little difficulty in interpreting it as covering the precise mechanism described and shown in the specification and drawings, minus the screw plug and some other minor details.    It certainly is a fair construction of this language to locate the tube as it is shown in the drawings, one end being at the stop located at the pivotal point against which stop the spring is compressed, and the other end attached to the valve proper, or connecting web.    It is hardly disputed that the peculiar mechanism devised by Boynton shows some exercise of the inventive faculty.    Defendant's brief, practically, admits that he is entitled to a patent limited to his peculiar details of construction.    The use of the. compressive spring would certainly have occurred to a skilled mechanic, but the location of the tube and the operation of the various parts, in the form and manner described by the patentee, insuring, as they do, a neat, compact and cheap structure, besides safety and durability, certainly required the exercise of ingenuity of a high order and, I am inclined to think, of invention also.    It is true that this device is very near the border line which separates invention from mechanical skill.    The patent should, however, have the benefit of the doubt.    It is thought that the second claim can be limited to the material features of the precise combination shown in the specification and drawings and that so construed it can be upheld.    The evidence does not establish a license except as conceded by the complainant.    The complainant does not ask for an accounting.    It follows that, upon filing a disclaimer of the first claim, the complainant can have a decree for an injunction as to the second claim, but without costs.