ESTATE OF HUSTAD: HUSTAD, Executor, Appellant, vs. WILBUR and another, Respondents.

*January 6—February 4, 1941.*

616

For the appellant there were briefs by *Marjorie Loomis Marshall* of Madison, and *Martin A. Tollund* of Mount Horeb, and oral argument by *Mrs. Marshall.*

For the respondent Carrie Wilbur there was a brief by *Sarah Gensler Schwartz* of Minneapolis, Minnesota, and *Stroud, Stebbins & Wingert* of Madison, and oral argument by *Mrs. Schwartz* and *Mr. Ray M. Stroud.*

For the respondent Lloyd Staub as general guardian of Eddie Hustad, incompetent, there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *Walter P. Ela.*

Fowler, J. The appeal is from a judgment of the county court of Dane county construing the will of Nels Hustad, deceased. The petitioner is a daughter and one of two surviving children of the testator. After making certain bequests and devises not here material the will by paragraph IX provides, "that all the rest, residue and remainder of my estate consisting of [three designated farms and the operahouse block in Mount Horeb] and all other real estate and personal property of which I may die seized, be turned into a trust estate for a period of twenty (20) years from the date of my death. It is my wish that my said farms and other properties be operated prudently and to the best interest of my said estate and the income thereof *in part* be paid annually as follows:" Here follows a direction to pay to each of four legatees $200 annually, two being the daughter and son of the testator. Then follows a provision that the four annual payments above mentioned "shall continue over a period of twenty (20) years during the life of said trust fund. In the event that my income should be insufficient to pay said legacies in full, . . . I hereby provide that they be prorated. . . . In the event that the income exceeds the said legacies [$800] and also the expenses of administration, that such excess shall become a part of the residue or corpus of my trust estate."

Then follows paragraph X which provides that,—"Twenty (20) years from the date of my death, it is my will and I hereby provide that my said trust estate shall terminate, that any farms and other real estate or securities shall be converted into cash for distribution to my residuary legatees and I hereby give, bequeath and devise said residue as follows:" Then follow bequests of $10,000 each to the daughter and son both of whom are adults, two bequests of $2,000 each and two of $3,000 each to other designated persons. Then follows the provision: "and any balance remaining thereafter to be divided" equally between the son and daughter.

Paragraph XI provides that no legacies "shall draw any interest but shall be paid by my executor as soon as he can conveniently cash in securities so as to make such payments possible and . . . I hereby provide that all sales of farm real estate shall be duly authorized by order of the county court."

Paragraph XII appoints a named person "as testamentary guardian for my said son [who is incompetent]. It is my wish that he take charge of the estate belonging" to the son.

Paragraph XIII appoints the appellant as "the executor and trustee . . . with full power . . . to sell real estate."

It was stipulated that the annual net income of the real estate of the testator is approximately $2,500.

The court held that the income from the personal property of the estate should be accumulated but the provision for the accumulation of the net income of the real estate comprised in the trust is void and that the excess net income of the real estate, that is the amount over the $800 in annuities plus the amount required to be expended for the ."prudent management" of the real estate, should be divided annually between the son and daughter.

The basic question involved is whether the statutes of the state prohibiting the accumulation of income from real estate except for specified purposes and during a specified period apply to defeat the provision of the will directing the accumulation of the excess income of the real estate in the trust. The statutes referred to read as follows:

"230.37  *Accumulation of profits of lands.*  An accumulation of rents and profits of real estate for the benefit of one or more persons may be directed by any will or deed, sufficient to pass real estate, as follows:

"(1) If such accumulation be directed to commence on the creation of the estate out of which the rents and profits are to arise it must be made for the benefit of one or more minors then in being and terminate at the expiration of their minority.

"(2) If such accumulation be directed to commence at any time subsequent to the creation of the estate out of which the. rents and profits are to arise it shall commence within the time in this chapter permitted for the vesting of future estates and during the minority of the persons for whose benefit it is directed, and shall terminate at the expiration of such minority.

"(3) For the sole benefit of a literary or charitable corporation which shall have been organized under the laws of this state, but such accumulation must terminate upon the· expiration of twenty-one years from the time when the same shall be directed to commence. ·

"230.38 *Directions for accumulation void, when.* If in either of the cases mentioned in section 230.37 the direction for such accumulation shall be for a longer time than is therein prescribed or than during the minority of the persons intended to be benefited thereby it shall be void as to such additional time, and all directions for the accumulations of rents and profits of real estate, except such as are herein allowed, shall be void."

From the inspection of the terms of these statutes and the terms of the will above quoted it appears, *a priori,* that the accumulation of the income from the real estate comprised in the trust provided for in the will is not for the benefit of any of the persons or corporations designated in sec. 230.37, Stats., and is therefore void under the declaration of sec. 230.38. If this be so, then the distribution of the excess income derived from such source is governed by the statute next quoted:

"230.40 *Rents, right of owner of next estate.* When, in consequence of a valid limitation of an expectant estate, there shall be a suspension of the power of alienation or of the ownership, during the continuance of which the rents and profits shall be undisposed of and no valid direction for their accumulation is given, such rents and profits shall belong to the person presumptively entitled to the next eventual estate."

Obviously the first inquiry is whether there is any rule of law that operates to avoid the declaration of the two statutes first quoted. The appellant claims that the rule of equitable conversion applies and so operates. The respondents contend that it does not.

In our state there is no restriction on the accumulation of income from personal property comprised in a trust. This subject is fully treated in *Will of Schilling,* 205 Wis. 259, 237 N. W. 122, 75 A. L. R. 184, and there is no need to discuss it here. As to real estate comprised in a trust, the statutory provisions above quoted apply.

Application of the doctrine of equitable conversion must rest on the fact that a deed or will expresses intent that land must be sold and the proceeds distributed. In such case land is treated as personal property. Equity considers that as done which ought to be done and handles proceeds of a commanded sale of real estate as the avails would have been handled had the testator or grantor himself made the sale. A direction to sell being commanded, whether an equitable conversion occurs depends on when the sale contemplated is intended to be made. In case of the creation of a trust by will, if intent appears that a sale shall be made at the time of the creation of the trust—that is at the death of the testator; or if the provision of the will be such that the manifest intent or scheme of the will cannot be carried out except by sale of the land forthwith; then an equitable conversion occurs as of the time of the death. If, however, the intent appears that the sale directed shall be made at the termination of the trust period, then there is no equitable conversion. To create an equitable conversion as of the time of the creation of a trust, the direction for sale, or the duty to sell at that time, must be absolute. Giving an option to sell land does not create an equitable conversion. The gist of the rule in

this respect is stated in 3 Pomeroy, Eq. Jur. (4th ed.), p. 2749, § 1160, as follows:

"If the act of converting—that is, the act itself of selling the land or of laying out the money in land—is left to the option, discretion, or choice of the trustees or other parties, then no equitable conversion will take place, because no *duty* to make the change rests upon them."

This idea is expressed in *Ford v. Ford,* 70 Wis. 19, 48, 33 N. W. 188, 5 Am. St. Rep. 117, in a quotation from *White v. Howard,* 46 N. Y. 162:

"To constitute a conversion of real estate into personal, in the absence of an actual sale, it must be made the duty of, and obligatory upon, the trustees to sell it *in any event."*

This rule applies to the power of the trustee in the instant will to sell prior to the end of the trust period. Such power is not absolute, but discretionary. There is no necessity for sale within the trust period. No duty is imposed to sell within that period. There is no obligation to sell within that period. The only positive direction to sell, the only obligation to sell does not arise, until the end of the period. This implies an intent that at least some of the real estate shall be held for the entire period and therefore the income from the real estate cannot under statute be accumulated.

The case in this court most closely in point is *De Wolf v. Lawson,* 61 Wis. 469, 21 N. W. 615, 50 Am. Rep. 148. The will there involved directed the executor to sell the real estate so far as necessary to pay legacies, and to put and keep it in repair and rent it and divide the net income between two churches for twenty years, and at the end of twenty years to sell it and pay the proceeds to the living children of a named daughter of the testator. The court held that because there was a direction to sell at the end of twenty years this showed an intention to hold for that period and rendered the

doctrine of equitable conversion inapplicable. There was another provision in that will that makes the case analogous here. The will charged the executors with the duty of caring for the testator's incompetent wife and directed them to sell as much of his real estate as might be necessary to pay his bequests and legacies. This would cover a sale to enable them to care for the widow, and be of the same effect as the provision of the instant will authorizing sale upon getting authority from the court. The effect of both provisions is that sale at the end of twenty years was intended by the testator.

The respondents contend that taking the will as a whole it shows an intent that the real estate shall be kept until termination of the trust. Foremost of the declarations of the will so indicating is the wish that the farms and other properties should be operated prudently and to the best interest of the estate. This is the first declaration of the will relative to the farms and the opera-house block, and was first in the testator's thoughts. The declaration for conversion is made in the paragraph of his will following the one above referred to and the only conversion there commanded is that it be made at the end of the twenty-year period. Need or occasion to sell before that time in order to carry out any direction or scheme of the will does not exist. Neither the executor nor the trustee may sell any farm or real estate except as duly authorized by the county court.

These provisions warranted the county court in holding that the testator intended that the farms named, the opera house, and the other real estate which included an unnamed farm, should be held for twenty years. There was thus no equitable conversion. As to such real estate there would be a violation of the statute if the excess income thereof were accumulated. The direction for accumulation of income is therefore void as to such property.

The appellant urges that the *Schilling Case, supra,* rules the case in his favor. No doubt certain statements may be found in the opinion that, taken by themselves and regardless of material facts, might be considered as so indicating. But upon the whole case it does not so seem to us. That case makes it plain that to constitute an equitable conversion an intent that the conversion shall take place at the time of the death must be shown by the will. The court there held that the manifest intention of that will could only be carried out by sale of the land before the termination of the trust. Therefore an equitable conversion existed. There was no direction, as here, that the conversion, that is the sale, or any sale, should take place at the end of the trust. Therefore it was deemed to have been intended to take place at the death of the testator.

As the income from the real estate cannot be accumulated the question remains what shall be done with it. It is residue of the estate undisposed of by the will. It cannot go to any of the residuary legatees except the son and daughter, because to each of these others a specific sum is bequeathed. It must therefore go to them, either as intestate property because they are the heirs or to them equally as residue after payment of all legacies and expenses of administration under sec. 230.40, Stats., as the persons "presumptively entitled to the next eventual estate." And as it cannot be accumulated it must be distributed as it is realized.

The above disposes of all questions raised by the parties.

*By the Court.*—The judgment of the county court is affirmed.